UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

CHRISTINE FUNN, on behalf of her infant son D.M.,

                                                                  Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER
MOHAMMAD ABDELFATTAH SHIELD #603, POLICE
OFFICER KEITH MEISNER SHIELD #7069,
SERGEANT ALEX RAMOS SHIELD #1480, POLICE
OFFICER JOHN DOE #1,

                                                     Defendants.

------------------------------------------------------------------------ x

**COMPLAINT AND JURY DEMAND**

Plaintiff Christine Funn, on behalf of her infant son D.M. and by her attorneys, Stoll, Glickman & Bellina, LLP, for her Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. § 1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a December 10, 2022 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected Plaintiff to, among other things, false arrest, and false imprisonment.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7. Plaintiff resided at all times here relevant in Kings County, City and State of New York. On December 10, 2022, Plaintiff was thirteen years old and a student enrolled in a New York City charter school in Brooklyn, New York.

8. The City of New York ("City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Police Officer Mohammad Abdelfattah, Police Officer Keith Meisner and Sergeant

Alex Ramos, were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of agents, servants, and employees of the City of New York. On information and belief, at all times relevant hereto, Officer Abdelfattah, Meisner and Ramos were involved in the decision to stop, search and detain Plaintiff without probable cause and failed to intervene in the actions of fellow officers who stopped, searched and detained plaintiff without probable cause. Upon information and belief, Officer Abdelfattah, Meisner and Ramos were under the command of Public Service Area 3 (PSA 3) within the 79th precinct on the date of the incident. They are sued in their individual capacities.

10. Police Officer John Doe #1 was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of agent, servant, and employee of the City of New York. On information and belief, at all times relevant hereto, the John Doe Defendant was involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of fellow officers when he observed them arresting Plaintiff without probable cause. Upon information and belief, the John Doe Defendant was under the command of PSA 3 and the 79th precinct on the date of the incident and is sued in his individual capacity.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

12. On December 10, 2022, at approximately 7:30PM, D.M. was walking his dog alone on Gates Ave. in Brooklyn. He was 13 years old.

13. Suddenly, a police car pulled up and several plainclothes officers jumped out. The officers shined flashlights at the 13-year-old plaintiff and demanded to know if he had anything

3

illegal on him. The officers then patted down plaintiff's clothing including his jacket pockets and his pants. Nothing but a cell phone was found.

14. The officers then demanded plaintiff's identification. Plaintiff told the officers he was 13 years old and did not have identification. Plaintiff felt a warm substance sprayed in his face.

15. The officers walked off without explanation, got back in their car and drove away. Plaintiff called his mother immediately and told her what happened. He was scared and traumatized. When his mother found him on the street, he was using his shirt to wipe the unknown substance from his face.

16. That same evening Plaintiff, with his mother's assistance, filed a complaint about his false arrest at the local precinct. An ambulance was called from the precinct, and plaintiff was checked to make sure he was not injured. A complaint was also filed with the Civilian Complaint Review Board.

17. Upon information and belief, the defendant officers failed to activate their body worn cameras prior to stopping Plaintiff.

18. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate Plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against Plaintiff.

19. During all of the events above described, defendants acted maliciously and with intent to injure Plaintiff.

**DAMAGES**

20. As a direct and proximate result of the acts of defendants, Plaintiff suffered the

following injuries and damages:

  a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of his person;

  b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

  c. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety; and

  d. Loss of liberty.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983

21. The above paragraphs are here incorporated by reference.

22. The officer defendants wrongfully and illegally arrested, detained, and imprisoned Plaintiff, and failed to intervene in each other's obviously illegal actions.

23. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

24. All of this occurred without any illegal conduct by Plaintiff.

25. No criminal charges were filed against Plaintiff.

26. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

27. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
### 42 U.S.C. §1983
### MUNICIPAL LIABILITY

28. The City is liable for the damages suffered by Plaintiff as a result of the conduct of its employees, agents, and servants. After learning of its employees' violation of Plaintiffs' constitutional rights, the City failed to remedy the wrong; it has created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue; and it has been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

29. The City knew of, or had reason to know, that Defendant Ramos was likely to violate the rights of persons such as Plaintiff. He is the subject of approximately 12 complaints made by civilians to the Civilian Complaint Review Board, at least 6 of which were substantiated, in addition to several lawsuits filed against him in Federal District Court for the Eastern District of New York, and in Kings County Supreme Court. Complaints to the CCRB and lawsuits filed against this Officer were numerous before the incident giving rise to this claim and have continued to grow in number since.

30. The City knew of, or had reason to know, that Defendant Abdelfattah was likely to violate the rights of persons such as Plaintiff. He is the subject of approximately 18 complaints made by civilians to the Civilian Complaint Review Board, at least 10 of which were

substantiated, in addition to several lawsuits filed against him in the Federal District Court for the Eastern District of New York, and in the Kings County Supreme Court. Complaints to the CCRB and lawsuits filed against this officer were numerous before the incident giving rise to this claim and have continued to grow in number since.

31. The City knew, or had reason to know, that defendant Meisner was likely to violate the rights of persons such as Plaintiff. He is the subject of approximately 7 complaints made by civilians to the Civilian Complaint Review Board, at least 4 of which were substantiated, in addition to several lawsuits filed against him in the Federal District Court for the Eastern District of New York and in Kings County Supreme Court.

32. Despite the previous claims of wrong-doing by these officers, the City has failed to take any steps to prevent future wrong-doing by these officers. This is representative of the City's ongoing failures to address police misconduct.

33. The City's continuing failure to deter police misconduct has led to an increase in the number of lawsuits for repeat routine misconduct by the same officers, same units, and same precincts.

34. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254-257, (1978)). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." *Hudson v. Michigan*, 547 U.S. 586, 598 (2006) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) and *Nix v. Williams,* 467 U.S. 431, 446, (1984)).

35. However, the City of New York has isolated NYPD officers from accountability for civil rights lawsuits by routinely indemnifying officers who violate the constitutional rights of citizens against all liability. The result is that civil rights lawsuits have no deterrent value to the City, the NYPD, or NYPD officers. "It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability." *Carlson v. Green*, 446 U.S. 14, 21, (1980) (citing *Imbler v. Pachtman*, 424 U.S. 409, 442 (1976)) [footnote omitted].

36. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even when the same officers are named in numerous lawsuits. In 1999, then-Comptroller Alan Hevesi reported that there was a "total disconnect" between the settlements of even substantial civil claims and NYPD action against officers. That total disconnect has remained fully in place since 1999. The result is a system in which the City pays vast sums of money to settle claims of constitutional violations, but the NYPD does nothing to investigate or address the underlying causes of such violations.

37. At a City Council hearing on December 12, 2009, and on other occasions, the City Council, Government Operations Committee has been alerted to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability. Nonetheless, the City Council has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units, and precincts are disproportionately responsible for New York City civil rights lawsuits.

38. The events underlying Plaintiff's factual allegations were not an isolated incident. The City has been aware for some time, from lawsuits, Notices of Claim, complaints filed with the

Civilian Complaint Review Board ("CCRB"), City Council hearings, newspaper reports, cases resulting in declined prosecutions and dismissals, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of NYPD officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

39. Moreover, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same precinct, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against Plaintiffs.

40. The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the of lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience, and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result.

41. Even as the use of stop and frisk has declined precipitously in recent years – in large part due to the federal class action lawsuit *Floyd, et al. v. City of New York, et al.*, 08-CV-1034 (SAS) – the police have continued to use the policing tactic in a severely racially disproportionate manner, and for the improper purpose of meeting "performance goals" (arrest quotas). According to data collected by the New York Civil Liberties Union ("NYCLU"), in

2014, New Yorkers were stopped by the police 46,235 times. Of the people stopped: 38,051 were totally innocent of any crime (82%); 24,777 were Black (55%); 12,662 were Latino (29%); and 5,536 were white (12%).[1]

42. The City's inability to prevent its officers from abusing the stop and frisk policy are emblematic of the City's continuing failures to exercise adequate control over the NYPD, and to prevent police officers from abusing their authority. Such failures have led to further abuse of authority by police officers, including the incident underlying Plaintiff's Complaint.

43. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

44. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors, in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. As the Honorable Jack Weinstein, United States District Court Judge of the Eastern District of New York, has written:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—

---

[1] *See* NYCLU, *Stop and Frisk Campaign: About the Issue*, http://www.nyclu.org/content/stop-and-frisk-data (last visited July 22, 2015).

> there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009).

45. The City is aware that all the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. Plaintiff has been damaged because of the City's deliberate indifference.

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

B. Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 3, 2025  
         Brooklyn, New York

Respectfully yours,

STOLL, GLICKMAN & BELLINA, LLP

_____
By: Nicole Bellina
300 Cadman Plaza W. Fl.12
Brooklyn, NY 11201
(718) 852-3710
nbellina@stollglickman.com
*Attorneys for Plaintiff*

TO:
    City of New York
    100 Church Street
    New York, NY 10007

Police Officer Mohammad Abdelfattah
Sgt. Alex Ramos
PSA 3
25 Central Ave.
Brooklyn, NY 11206

Police Officer Keith Meisner
116th Precinct
244-04 North Conduit Avenue,
Queens, NY 11422